**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
UNITED STATES OF AMERICA            :
                                    :
     -against-                      :         No. 14 Cr. 620 (JFK)
                                    :
RAMESH SESHAN,                      :         **OPINION & ORDER**
                                    :
                    Defendant.      :
------------------------------------X

APPEARANCES

FOR DEFENDANT RAMESH SESHAN:
    Annalisa Mirón
    FEDERAL DEFENDERS OF NEW YORK

FOR THE UNITED STATES OF AMERICA:
    Andrew A. Rohrbach
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge**:

Before the Court is an emergency motion by Ramesh Seshan for a sentence reduction to time served and his immediate release from the Federal Medical Center, Devens in Ayer, Massachusetts ("FMC Devens"), or, in the alternative, for immediate transfer to home confinement, due to Seshan's serious underlying health issues, including his end-stage renal failure requiring dialysis, and the threat he faces from the Coronavirus, COVID-19 ("COVID-19"). The Government opposes Seshan's motion as procedurally barred because his earlier petition under the applicable statute, 18 U.S.C. § 3582(c)(1)(A)(i), which was filed in July 2019, did not raise COVID-19 as a justification for compassionate release, and

1

substantively meritless because Seshan's preexisting medical conditions, the circumstances of his incarceration, and the 18 U.S.C. § 3553(a) sentencing factors do not warrant a modification to his term of imprisonment.

For the reasons set forth below, Seshan's motion is DENIED.

**I.  Background**

On September 16, 2014, Seshan was charged in a two-count information with conspiracy to distribute and possession with intent to distribute 280 grams or more of crack cocaine over a 15-year period from 1998 until 2013, in violation of 21 U.S.C. §§ 846 and 841, and discharging a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924. (Information, ECF No. 11.)  Seshan pleaded guilty to the first count on May 28, 2015.  However, at his allocution, Seshan "acknowledge[d] that the [G]overnment would have been able to prove that on December 4th of 2013 I shot an individual in the buttocks after an argument in the area of Burke Avenue and Holland Avenue, which was an area where I sold drugs[.]"  (Plea Tr. at 12:24-13:3, ECF No. 22.)

Seshan's sentencing occurred on February 3, 2016, during which the Court found a Guidelines incarceration range of 151 months to 188 months, with a mandatory minimum of 120 months. (Sent. Tr. at 8:23-24, ECF No. 29.)  The Court sentenced Seshan to the mandatory minimum, "the lowest I can," in light of

Seshan's end-stage renal failure, which necessitated kidney dialysis three times per week, and his record of good conduct during the approximately 18 months of incarceration he had already served. (Id. at 9:17–23.) The Court directed the Federal Bureau of Prisons ("the BOP") to continue providing Seshan with dialysis treatment for his kidney condition and "strongly recommend[ed]" that he be placed on the kidney transplant list. (Id. at 9:25–10:7; Judgment at 2, ECF No. 27.) To date, Seshan has served almost six years of his 10-year sentence. With credit for good time, the BOP estimates that he will be released on December 18, 2022. See Find an Inmate, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited May 5, 2020).

Seshan is 47 years old and he suffers from anemia, hypertension, and sleep apnea in addition to the renal failure. Seshan is currently serving his sentence at FMC Devens where, as of May 5, 2020, one inmate had tested positive for, and later died from, COVID-19. See COVID-19 Cases, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 3, 2020).

On April 7, 2020, Seshan submitted a pro se motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), on the grounds that his deteriorating health conditions and rehabilitative efforts constitute "extraordinary and compelling reasons" to reduce his sentence. (Mot. for

3

Compassionate Release (Mar. 24, 2020), Ex. A to Letter from Annalisa Mirón, Assistant Fed. Def., to Hon. John F. Keenan (Apr. 13, 2020), ECF No. 34-1.)  The Court forwarded Seshan's pro se motion to the Federal Defenders of New York, who entered a notice of appearance on his behalf that same day.  (Notice of Appearance (Apr. 7, 2020), ECF No. 31.)  On April 13, 2020, Seshan's counsel filed a supplemental letter in support of his request for compassionate release.  (Letter from Annalisa Mirón, Assistant Fed. Def., to Hon. John F. Keenan (Apr. 13, 2020), ECF No. 34.)  Seshan's counsel argued that the growing COVID-19 pandemic provided additional grounds for compassionate release and urged the Court to reduce Seshan's sentence or order his immediate transfer to home confinement for the remainder of his term of incarceration.  (Id.)

On April 15, 2020, the Government filed a letter explaining that the BOP had cleared Seshan for transfer to home confinement pursuant to 18 U.S.C. § 3624(c)(2), subject to the BOP's satisfaction that he would be able to obtain adequate healthcare in the community.  (Letter from Andrew A. Rohrbach, Assistant United States Attorney, to Hon. John F. Keenan (Apr. 15, 2020), ECF No. 35.)  However, on April 21, 2020, the Government notified the Court that the BOP had reversed its decision to place Seshan in home confinement.  (Letter from Andrew A. Rohrbach, Assistant United States Attorney, to Hon. John F.

Keenan (Apr. 21, 2020), ECF No. 37.)  Although the Government's letter did not specify exactly why the BOP had reversed itself, the Government's opposition, which was filed the following day, explained that the BOP had initially highlighted Seshan as a candidate for home confinement based on the understanding that he had committed a non-violent drug conspiracy offense.  (Letter from Andrew A. Rohrbach, Assistant United States Attorney, to Hon. John F. Keenan at 3–4 (Apr. 22, 2020) ("Opp'n"), ECF No. 39.)  Upon closer review of Seshan's file, however, the BOP realized that his criminal conduct also included discharging a firearm into another person.  (Id. at 4.)  Accordingly, the BOP had concluded that Seshan was not an appropriate candidate for transfer to home confinement.  (Id.; see also Mem. from William P. Barr, Attorney Gen., to Dir. of Bureau of Prisons, Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (recommending home confinement for "at-risk inmates who are non-violent and pose minimal likelihood of recidivism").)

The Government likewise opposed Seshan's request for compassionate release on the grounds that his offense conduct was serious and involved an act of violence.  (Opp'n at 11–12.)  The Government also argued that the Court lacks the authority to consider Seshan's arguments regarding the threat of COVID-19 and

5

his rehabilitation efforts because Seshan did not raise these arguments in his 2019 petition to the BOP. (Id. at 6–9.) Accordingly, the Government argued, Seshan did not first fully exhaust his administrative rights with respect to these grounds for compassionate release. (Id.) The Court, however, need not reach this argument because it concludes that a reduction of Seshan's sentence is not warranted.

Seshan's counsel filed a reply on April 27, 2020. (Letter from Annalisa Mirón, Assistant Fed. Def., to Hon. John F. Keenan (Apr. 13, 2020), ECF No. 42.) The motion was heard during a telephonic conference on April 30, 2020. At the Court's request, following the telephonic conference, the Government and Seshan's counsel provided additional information to the Court regarding the conditions of Seshan's incarceration at FMC Devens and his release plan.

**II. Discussion**

18 U.S.C. § 3582(c)(1)(A) authorizes a court to modify a term of imprisonment "upon motion of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Where this exhaustion requirement is satisfied, a court may

reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A)(i).  In doing so, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. § 3582(c)(1)(A).  "Application of the § 3553(a) factors requires an assessment of whether the relevant factors 'outweigh the "extraordinary and compelling reasons" warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence.'" United States v. Daugerdas, No. 09 Cr. 581 (WHP), 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations in original) (quoting United States v. Ebbers, --- F. Supp. ---, No. 02 Cr. 11443 (VEC), 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020)).

The U.S. Sentencing Commission ("the Commission") is tasked with "promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [to] describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t); see also Ebbers, 2020 WL 91399, at *4.  As relevant here, the Commission's policy statement and corresponding commentary provide that extraordinary and compelling reasons may exist where (1) "[t]he defendant is suffering from a terminal

7

illness;" (2) the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" or (3) "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described [above]." U.S. Sentencing Guidelines Manual (U.S.S.G.) § 1B1.13(1)(A) & cmt. n.1(A), (D) (U.S. Sentencing Comm'n 2018).[1] The defendant, however, must not be "a danger to the safety of any other person or to the community." Id. § 1B1.13(2). "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); see also U.S.S.G. § 1B1.13 cmt. n.3.

Here, the second and third factors support Seshan's request.[2] Although the BOP has not designated him a medically

---

[1] Section 1B1.13 of the Guidelines Manual references only a "motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act, which allows a defendant to move for compassionate release on his or her own. Nevertheless, "there is no indication in the text or the [Commission]'s policy statements that the identity of the movant should affect the meaning of the phrase 'extraordinary and compelling reasons.' Thus, U.S.S.G. § 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current, even if references to the identity of the moving party are not." Ebbers, 2020 WL 91399, at *4.

[2] The Court need not decide whether Seshan suffers from a terminal illness because the second and third factors alone could give rise to the requisite "extraordinary and compelling reasons" for release. However, the Court notes that the BOP, in considering Seshan's application for compassionate release on the grounds that he suffers

8

"high-risk" inmate with respect to COVID-19, Seshan's claim that he is at heightened risk of serious illness or death if he contracts the virus is plausible given his end-stage renal failure and hypertension. See People Who Are at Higher Risk for Severe Illness, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 5, 2020) (listing chronic kidney disease requiring dialysis as an elevated risk factor for a severe case of COVID-19). "The nature of prisons—crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products—put those incarcerated inside a facility with an outbreak at heightened risk." United States v. Park, No. 16 Cr. 473 (RA), 2020 WL 1970603, at *2 (S.D.N.Y. Apr. 24, 2020) (collecting sources).

Nevertheless, after considering the 3553(a) factors, including the nature and circumstances of Seshan's offense and

---

from "end-state organ disease," determined that "[t]here is no indication your life expectancy, given your current condition and treatment plan, . . . meet[s] the criteria for a [reduction in sentence] for a terminal medical condition." (Part B Response by Ian Connors, Adm'r Nat'l Inmate Appeals (Jan. 21, 2020), Ex. A to Letter from Annalisa Mirón, Assistant Fed. Def., to Hon. John F. Keenan (Apr. 13, 2020), ECF No. 34-1.) Cf. United States v. Goode, No. 14 Cr. 810 (CM), 2020 WL 58272, at *6 (S.D.N.Y. Jan. 6, 2020) (denying motion for compassionate release where "[t]he 'terminal' nature of [the defendant]'s condition is no different than it was when this Court imposed sentence—she had been diagnosed with 'end stage kidney disease' and was receiving dialysis").

9

his history and characteristics, 18 U.S.C. § 3553(a)(1), as well as the need for the sentence imposed and the kinds of sentences available, id. § 3553(a)(2)-(3), the Court finds that reducing Seshan's term of incarceration would not be "consistent with applicable policy statements issued by the Sentencing Commission," id. § 3582(c)(1)(A)(i), nor would it be supported by the "factors set forth in section 3553(a)," id. § 3582(c)(1)(A).  Accordingly, Seshan's motion must be denied.

First, the Court cannot find that Seshan "is not a danger to the safety of any other person or to the community," as the Court must before it may reduce a term of imprisonment or modify a sentence to one of home confinement. U.S.S.G. § 1B1.13(2). Here, the underlying conduct that led to Seshan's incarceration gravely endangered the safety of the community—and directly endangered the life of at least one individual.  Indeed, at his allocution, Seshan admitted to selling crack cocaine in the Bronx for approximately 15 years, during which he shot an individual in the buttocks after an argument.  (Plea Tr. at 12:18-13:3, ECF No. 22.)  Further, the Presentence Investigation Report ("the PIR") explained that Seshan's record includes convictions in 2011, 2007, 2006, and 2001, for drug offenses involving the sale or possession of a controlled substance; and a conviction in 2002, for criminal possession of a loaded firearm.  (Revised Final Presentence Investigation Report ¶ 11

(Feb. 9, 2016), ECF No. 28.)  The PIR also explained that Seshan shot the victim in this case in December 2012, after they had entered into an argument, Seshan pulled out a gun, and the victim ran away.  (Id. ¶ 13 n.1.)

Second, the circumstances of Seshan's incarceration at FMC Devens, and the extra precautions the BOP represents it is taking to protect inmates from COVID-19, weighs against his argument that the instant public health emergency warrants Seshan's immediate release.  Based on its conversations with the BOP, the Government represents that the one inmate at FMC Devens who tested positive for COVID-19 was placed in an isolation unit to ensure that the virus was not transmitted to anyone else. Tragically, according to the BOP's website, the inmate appears to have died since the Court heard argument on Seshan's motion. See COVID-19 Cases, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 5, 2020). Prior to the inmate's death, however, the BOP explained to the Government that Seshan has not been housed in the same unit as the inmate who tested positive for COVID-19 since at least August 2019—well before the virus appears to have infected anyone in the United States.  Further, of the 12 other inmates at FMC Devens who were tested for COVID-19, none tested positive.  The Court recognizes that Seshan and several other inmates in his unit must leave the prison multiple times each

11

week to undergo kidney dialysis, and under these circumstances it is possible that he may be exposed to COVID-19 while incarcerated.  Seshan's release plan, however, would still require similar such outpatient dialysis treatment, thereby potentially exposing him to the same risk of contracting the virus.

Finally, and decisive here, application of the § 3553(a) sentencing factors does not favor Seshan's early release.  Here, the factors that weigh in Seshan's favor, such as his exemplary behavior in prison, both before and after sentencing, and the need to provide him with necessary medical care, are outweighed by the combined force of "the nature and circumstances of the offense" and the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).  Indeed, the Court cited Seshan's excellent disciplinary history and his medical needs as grounds for his original below-Guidelines sentence.  Accordingly, converting Seshan's 10-year term of incarceration to one of home confinement, when he has served less than six years of that sentence, would disserve these important sentencing factors. See, e.g., United States v. Walter, No. 18 Cr. 834 (PAE), 2020 WL 1892063, at *3 (S.D.N.Y.

Apr. 16, 2020) (denying, as inconsistent with the § 3553(a) factors, compassionate release to a defendant with serious medical issues whose offense conduct gravely endangered the safety of the community); United States v. Andrews, No. 16 Cr. 378 (AT), 2020 WL 1847861, at *2 (S.D.N.Y. Apr. 10, 2020) (denying compassionate release to a medically "high risk" defendant whose offense conduct did not satisfy U.S.S.G. § 1B1.13(2)).

### III. Conclusion

For the reasons set forth above, Seshan's motion for reduction in sentence or home confinement pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), is DENIED.

The Clerk of Court is directed to terminate the motions docketed at ECF Nos. 34 and 37.

**SO ORDERED.**

Dated:   New York, New York
         May 6, 2020

_____
John F. Keenan
United States District Judge

13