USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/10/21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
UNITED STATES OF AMERICA              :
                                      :
        -against-                     :     No. 14 Cr. 620 (JFK)
                                      :
RAMESH SESHAN,                        :     **OPINION & ORDER**
                                      :
                    Defendant.        :
------------------------------------X

APPEARANCES

FOR DEFENDANT RAMESH SESHAN:
    Pro Se

FOR THE UNITED STATES OF AMERICA:
    Andrew A. Rohrbach
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

  Before the Court is Defendant Ramesh Seshan's renewed pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). In his motion, Seshan asks the Court to reduce his sentence to time served and convert the outstanding balance of his sentence to supervised release with a condition of home confinement.[1] Seshan argues that his medical conditions and the

---

[1] The Court notes that 18 U.S.C. § 3582(c)(1)(A) does not expressly address the modification of a term of imprisonment into a term of home confinement. However, to achieve this result, a district court may reduce a defendant's sentence to time served and release the defendant to supervised release with a condition of home confinement. See United States v. Fairbanks, No. 17 Cr. 6124 (FPG), 2021 WL 776982, at *3 (W.D.N.Y. Mar. 1, 2021) (collecting cases); see also United States v. Parmar, No. 18 Cr. 877, 2020 U.S. Dist. LEXIS 245680 at *2 (S.D.N.Y. Dec. 31, 2020) (noting that "the Court does not have the authority to transfer [the defendant] to home confinement, except when reducing a term of imprisonment pursuant to Section 3582(c)(1)(A)(i)" (emphasis in original)).

threat posed by the COVID-19 Delta Variant constitute "extraordinary and compelling reasons" warranting compassionate release, and that the time he has already served is sufficient to satisfy the sentencing goals of 18 U.S.C. § 3553(a).  The Government opposes the motion, arguing that Seshan has failed to identify an extraordinary and compelling reason for reducing his sentence.  The Government further contends that a reduction in Seshan's sentence would be inconsistent with the sentencing factors of 18 U.S.C. § 3533(a).  For the reasons set forth below, Seshan's renewed motion is GRANTED.

## I. Background

On June 13, 2014, Seshan was arrested and charged with one count of conspiracy to distribute 280 grams or more of crack cocaine from at least 1998 to 2013, in violation of 21 U.S.C. §§ 846 and 841, and one count of discharging a firearm during and in relation to that crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).  (Information, ECF No. 11.)  Pursuant to a plea agreement, Seshan pled guilty to the conspiracy charge on May 28, 2015.  During his plea allocution, Seshan "acknowledge[d] that the [G]overnment would have been able to prove that on December 4th of 2013 I shot an individual in the buttocks after an argument in the area of Burke Avenue and Holland Avenue, which was an area where I sold drugs[.]"  (Plea Tr. at 12:24-13:3, ECF No. 22.)

Seshan's sentencing occurred on February 3, 2016, during which the Court found that the applicable Sentencing Guidelines range was 151 months to 188 months of incarceration, with a mandatory minimum of 120 months. (Sent. Tr. at 8:23–24, ECF No. 29.) The Court sentenced Seshan to the mandatory minimum, "the lowest I can," in light of Seshan's end-stage renal failure, which necessitated kidney dialysis three times per week, and his record of good conduct during the approximately 18 months of incarceration he had already served. (Id. at 9:17–23.) The Court directed the Federal Bureau of Prisons ("the BOP") to continue providing Seshan with dialysis treatment for his kidney condition and "strongly recommend[ed]" that he be placed on the kidney transplant list. (Id. at 9:25–10:7; Judgment at 2, ECF No. 27.) To date, Seshan has served almost 6 years of his 10-year sentence. With credit for good time, the BOP estimates that he will be released on December 18, 2022. (Government's Letter in Opposition to Sept. 7, 2021 Motion at 2 ("Gov't's Opp'n"), ECF No. 56.)

On April 7, 2020, Seshan submitted a pro se motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). In that motion, Seshan argued that his deteriorating health and rehabilitative efforts constituted "extraordinary and compelling reasons" warranting a reduction in his sentence. (Mot. for Compassionate Release, Ex. A Letter

3

from Annalisa Mirón, Assistant Fed. Def., to Hon. John F. Keenan (Apr. 13, 2020), ECF No. 34-1.)  The Court forwarded Seshan's pro se motion to the Federal Defenders of New York, who entered a notice of appearance on Seshan's behalf that day.  (Notice of Appearance (Apr. 7, 2020), ECF No. 31.)  Seshan's counsel subsequently argued that the growing COVID-19 pandemic provided additional grounds for compassionate release and urged the Court to reduce Seshan's sentence or order his immediate transfer to home confinement for the remainder of his term of incarceration.  (Letter from Annalisa Mirón, Assistant Fed. Def., to Hon. John F. Keenan (Apr. 13, 2020), ECF No. 34.)  The Government opposed Seshan's motion and argued, in part, that the sentencing factors set forth in 18 U.S.C. § 3553(a) did not support a reduction in Seshan's sentence because his criminal conduct involved an act of violence.  (Government's Letter in Opposition to April 7, 2020 Motion at 11-12, ECF 40.)

On May 6, 2020, the Court issued an Opinion and Order ("the May 6 Order") denying Seshan's motion for compassionate release.  In the Order, the Court concluded that although Seshan's health conditions and the risk posed by COVID-19 qualified as extraordinary and compelling reasons for compassionate release, a reduction in Seshan's sentence would be inconsistent with the policy statement set forth in U.S.S.G § 1B1.13, and the sentencing factors of 18 U.S.C. § 3553(a).  See United States v.

Seshan, No. 14 Cr. 620 (JFK), 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020), aff'd, 850 F. App'x 800 (2d Cir. 2021). Specifically, the Court found that "the factors that weigh in Seshan's favor, such as his exemplary behavior in prison . . . and the need to provide him with necessary medical care, are outweighed by the combined force of 'the nature and circumstances of the offense' and the need for the sentence imposed to 'reflect the seriousness of the offense,' 'promote respect for the law,' 'provide just punishment for the offense,' 'afford adequate deterrence to criminal conduct,' and 'protect the public from further crimes of the defendant.'" Id. (quoting 18 U.S.C. § 3553(a)). The Court further noted that it had considered Seshan's end-stage renal failure and good conduct in prison when granting a downward variance at his sentencing. See id. at 2.

Seshan appealed the Court's decision, arguing that the Court abused its discretion in concluding that his release would be inconsistent with the sentencing factors contained in § 3553(a). The Second Circuit rejected Seshan's argument and affirmed this Court's decision in a summary order. In the summary order, the Second Circuit stated that this Court "did not abuse its discretion in denying Seshan's motion for compassionate release on the ground that—even though Seshan's medical history combined with the Covid-19 pandemic presented an

5

extraordinary and compelling reason—his release was unwarranted upon consideration of the § 3553(a) factors." United States v. Seshan, 850 F.App'x 800, 802 (2d Cir. 2021) (summary order).

On September 7, 2021, Seshan filed a Renewed Motion for Compassionate Release. (Renewed Motion for Compassionate Release, Sept. 7, 2021 ("Renewed Motion"), ECF No. 54.) In that motion, Seshan argues that his medical conditions, including his end-stage renal failure, hypertension, and anemia, coupled with the presence of the COVID-19 Delta Variant in his facility, constitute extraordinary and compelling reasons warranting his release and transfer to home confinement. (Renewed Motion, ECF No. 54.) On September 9, 2021, Seshan underwent kidney transplant surgery at Beth Israel Medical Center in Boston, Massachusetts. (Gov't Opp'n, Ex. A at 31.) On October 20, 2021, Seshan submitted additional medical records in support of his Renewed Motion. (Supplemental Motion, ECF No. 57.) In a letter accompanying those records, Seshan notes that he is now taking immunosuppressant medications as a result of the transplant. (Id. at 1, and Ex. 3.) Seshan argues that due to his immunosuppressant state and other underlying medical conditions, he is particularly vulnerable to contracting COVID-19 and developing a serious illness if infected. (Id. at 1.)

The Government, in a Letter in Opposition filed on October 8, 2021, argues Seshan has failed to establish that

6

"extraordinary and compelling circumstances justify[] his release." (Gov't Opp'n at 6.) According to the Government, COVID-19 no longer poses a significant threat to Seshan because he is fully vaccinated, the vaccination rate at FMC Devens is high, and the infection rate at the facility is exceedingly low. (Id. at 6.) The Government further argues that even if the Court were to conclude that extraordinary and compelling circumstances support Seshan's release, any modification of his sentence would be inconsistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). (Id. at 6.) Specifically, the Government argues that "[n]othing has changed since the Court's [May 6 Order]. . . . Seshan's offense conduct remains serious [and] Seshan continues to pose a danger to the community." (Id.)

## II. Discussion

### A. Legal Standard

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, a district court may reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Court is also required to consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent

that they are applicable." Id.[2]  The § 3553(a) factors include "the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities." United States v. Roney, 833 F. App'x 850, 852 (2d Cir. 2020) (quoting 18 U.S.C. § 3553(a)).  Application of these factors requires a determination of whether the "factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence." United States v. Ebbers, --- F. Supp. ---, No. 02 Cr. 11443 (VEC), 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020).

In the Second Circuit, the U.S. Sentencing Commission's policy statement concerning what qualifies as an "extraordinary and compelling" reason for release "is not 'applicable' to compassionate release motions brought by defendants," and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." United

---

[2] The statute also imposes a mandatory exhaustion requirement, see 18 U.S.C. § 3582(c)(1)(A), which, as the Government concedes in its opposition, Seshan has satisfied. (Gov't Opp'n at 5 n.3.)

States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020). Accordingly, district courts are free to "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." Brooker, 976 F.3d at 237; see also United States v. Ciprian, No. 11 Cr. 1032 (PAE), 2021 U.S. Dist. LEXIS 18698, at *5 (S.D.N.Y. Feb. 1, 2021) ("[T]he Court is not constrained by either § 1B1.13's enumeration of extraordinary and compelling reasons or by its freestanding requirement that the defendant seeking release not pose any danger to the community").

**B. Analysis**

Here, Seshan has again established that "extraordinary and compelling reasons" exist warranting a reduction in his sentence. As noted previously, Seshan's medical records demonstrate that he is currently taking several immunosuppressant medications as a result of his recent kidney transplant. See Supplemental Motion, ECF No. 57. The government concedes in its Letter in Opposition that Seshan will be required to take these medications for "a lengthy period of time." Gov't Opp'n at 6 n.4. The CDC has recognized that individuals taking immunosuppressant medications "are more likely to get severely ill from COVID-19." Ctrs. for Disease Control and Prevention, People with Certain Medical Conditions, https:// www.cdc.gov/coronavirus/2019-ncov/need-extra-

precautions/people-with-medical-conditions.html. (last visited Dec. 9, 2021). The CDC has also indicated that "[p]eople who . . . are taking medications that weaken their immune system may not be protected [from COVID-19] even if they are fully vaccinated."[3] Id.

Seshan's immunocompromised state and his underlying medical conditions place him at severe risk of contracting COVID-19 and developing serious, possibly life-threatening illness if infected. Accordingly, the Court concludes that "extraordinary and compelling reasons" exist warranting a reduction in his sentence. See United States v. Bush, No. 17 Cr. 611-4 (AT), 2021 WL 3097417, at *2 (S.D.N.Y. July 21, 2021) (noting "[c]ourts have granted modified sentences in light of COVID-19 for inmates with illnesses or injuries that make them particularly vulnerable to COVID-19"); see also United States v. Campagna, No. 16 Cr. 78 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an

---

[3] According to the CDC, "[i]mmunocompromised people have lower vaccine effectiveness compared to non-immunocompromised people (59-72% vs. 90-94%, respectively)." Ctrs. For Disease Control and Prevention, ACIP Evidence to Recommendations for Use of an Additional COVID-19 Vaccine Does in Immunocompromised People, https://www.cdc.gov/vaccines/acip/recs/grade/covid-19-immunocompromised-etr.html (last visited Nov. 16, 2021). Additionally, "[i]mmunocompromised people are also more likely to have serious breakthrough infections, with 40-44% of hospitalized breakthrough cases occurring among immunocompromised people." Id.

extraordinary and compelling reason to modify to Defendant's sentence").

Turning to the sentencing factors of 18 U.S.C. § 3553(a), the Court begins by noting that "the nature and circumstances of the offense" continue to weigh against modifying Seshan's ten-year sentence. As the Court stated in its May 6 Order, Seshan admitted to having sold crack cocaine for over a decade. See Seshan, 2020 WL 2215458, at *1. In his plea agreement, Seshan pled guilty to conspiring, from at least 1998 until December 2013, to distribute 280 grams or more of crack cocaine. Id. According to the Presentence Investigation Report ("PIR"), Seshan was convicted of various drug and firearm related charges in 2001, 2002, 2006, 2007, and 2011. (Revised Final Presentence Investigation Report ¶ 11 (Feb. 9, 2016), ECF No. 28.) Finally, as noted previously, Seshan admitted during his plea allocution that he shot an individual over a dispute involving drugs. (Id. ¶ 13 n.1.) The duration and seriousness of Seshan's prior criminal conduct undoubtedly militate against granting the instant motion. See, e.g., United States v. Walter, No. 18 Cr. 834 (PAE), 2020 WL 1892063, at *3 (S.D.N.Y. Apr. 16, 2020) (denying, as inconsistent with the § 3553(a) factors, compassionate release to a defendant with serious medical issues whose offense conduct gravely endangered the safety of the community).

Nevertheless, due to Seshan's immunocompromised condition and the acute dangers posed by the COVID-19 Delta Variant, the majority of the § 3553(a) factors now support modifying Seshan's sentence.  Because of his heightened risk of contracting COVID-19 and developing serious illness, the "history and characteristics of the defendant" and the "need . . . to provide the defendant with needed medical care," § 3553(a), weigh in favor of modifying Seshan's sentence to a period of home confinement.  See United States v. Pena, No. 15 Cr. 551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020); see also United States v. Rodriguez, No. 17 Cr. 157 (VEC), 2020 WL 3051443, at *3 (S.D.N.Y. June 8, 2020)(noting that the "'history and characteristics of the defendant' and the 'need . . . to provide the defendant with needed . . . medical care,' . . . are factors that can support a sentence reduction during [the COVID-19] pandemic" (citations omitted)).  Additionally, although Seshan's criminal conduct was serious, he has served more than six years of his sentence and is scheduled to be released in twelve months.  Seshan's confinement at home for the remainder of his sentence will adequately "reflect the seriousness of the offense, . . . promote respect for the law, . . . provide just punishment for the offense," and "afford adequate deterrence to criminal conduct."  18 U.S.C. 3553(a)(2)(A), (B); see also Pena, 459 F. Supp. 3d 551 (noting the "[t]he time [defendant] has

served in prison has already achieved much of the original sentence's retributive, deterrent, and incapacitative purpose"). Finally, due to his poor physical health, Seshan's continued incarceration at FMC Devens is not necessary to "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).

Having considered the factors of Section 3553(a), the Court concludes that they no longer outweigh the "extraordinary and compelling reasons" that support Seshan's motion for compassionate release.  Indeed, the Court finds that the § 3553(a) factors, taken together, support modifying Seshan's sentence to a period of home confinement.  Accordingly, the Court GRANTS Seshan's Renewed Motion for Compassionate Release (ECF No. 54) under 18 U.S.C. § 3582(c)(1)(A).  It is hereby ORDERED that Ramesh Seshan is RESENTECED to TIME SERVED plus 5 years of supervised release under the conditions in the original judgment.  The mandatory conditions, standard conditions, and special conditions of supervised release from Seshan's original sentence are hereby imposed.

It is FURTHER ORDERED that the following additional terms of supervised release are hereby imposed:
1. Seshan must reside at the location ("the Residence") designated in Exhibit C of his March 14, 2020, filing (ECF Nos. 34, 34-1) until December 18, 2022.

13

2. Seshan must remain confined to the Residence until December 18, 2022. During this period of home confinement, Seshan is permitted to leave the Residence only to attend medical appointments, visit with counsel, or as otherwise authorized by the Probation Department.

3. Seshan must notify the Probation Department for the Southern District of New York upon his arrival at the Residence and he is directed to follow the instructions of the assigned probation officer, as well as the conditions of supervised release imposed at the time of his sentence.

The Government is ORDERED to release Ramesh Seshan, Register Number 92228-054, from custody by December 15, 2021. The BOP is directed to provide Seshan with funds and costs of transportation, if necessary, to the Residence in Scranton, Pennsylvania, pursuant to 18 U.S.C. § 3624(d).

**SO ORDERED.**

Dated: New York, New York
December 9, 2021

John F. Keenan
United States District Judge